UNITED STATES DISTRICT COURT
FOR THE
WESTERN DISTRICT OF NEW YORK

MARC IRWIN KORN,

    Plaintiff,

v.

FEDERAL INSURANCE CO.,

    Defendant.

Case No. 1:17-cv-00188

**OPINION AND ORDER
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**
(Doc. 39)

On December 30, 2016, Plaintiff Marc Irwin Korn filed an action against Defendant Federal Insurance Company in New York state court arising out of a dispute regarding defense costs under an insurance policy. Plaintiff filed an Amended Complaint on January 19, 2017 alleging the same claims.[1] On March 1, 2017, Defendant removed the case to federal court based on diversity of citizenship jurisdiction pursuant to 28 U.S.C. § 1332. On December 27, 2018, Defendant moved for summary judgment on each of Plaintiff's claims and sought a declaratory judgment pursuant to its counterclaim. Plaintiff opposed the motion. On April 26, 2019, the court heard oral argument, at which time the court took the pending motion under advisement.[2]

Steven M. Cohen, Esq., Randy Carl Mallaber, Esq., and Ryan Johnsen, Esq. represent Plaintiff. Adam Stein, Esq. and Laura B. Dowgin, Esq. represent Defendant.

---

[1] Plaintiff's Amended Complaint contains five "causes of action," three of which appear to seek only damages. The remaining two causes of action are not labelled but appear to allege vicarious liability/breach of a fiduciary duty, breach of the duty to defend, breach of the Policy on other grounds, and violations of the implied covenant of good faith and fair dealing.

[2] Although the parties' filings are sealed at their request, the court finds no grounds for sealing its Opinion and Order which does not reveal attorney-client confidences and which provides only generalized statements regarding Plaintiff's criminal case in order to explain its complexity, longevity, and outcome.

I.      **Whether the Court Should Consider Plaintiff's Statement of Disputed Facts.**

In support of its motion for summary judgment, Defendant filed a statement of undisputed facts as required by the Western District of New York's Local Rules. In his response, Plaintiff disputes Defendant's characterization of the evidence but does not provide citations to the record in support of each disputed fact. The Federal Rules of Civil Procedure provide:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

Pursuant to the Western District of New York's Local Rules: "Each numbered paragraph in the [Defendant's] statement of material facts may be deemed admitted for purposes of the motion unless it is specifically controverted by a correspondingly numbered paragraph in [Plaintiff's] opposing statement." L. R. Civ. P. 56(a)(2).

To the extent Plaintiff provides record citations in his Opposition, the court will consider those supported facts as disputed. However, the court disregards facts that are disputed without citation to admissible evidence.[3] To the extent Defendant relies on facts that Plaintiff has not properly controverted, those facts will be deemed admitted.[4]

---

[3] *See Lester v. M&M Knopf Auto Parts*, 2006 WL 2806465, at *2 (W.D.N.Y. Sept. 28, 2006) ("In light of Plaintiff's express failure to properly controvert Defendant['s] statement of facts, this [c]ourt will deem those factual assertions admitted to the extent they are supported by the record evidence."); *see also Glazer v. Formica Corp.*, 964 F.2d 149, 154 (2d Cir. 1992) ("When a party has moved for summary judgment . . . [and] has, in accordance with local court rules, served a concise statement of the material facts as to which it contends there exist no genuine issues to be tried, those facts will be deemed admitted unless properly controverted by the nonmoving party.").

[4] *See Monahan v. N.Y.C. Dep't of Corrs.*, 214 F.3d 275, 291-92 (2d Cir. 2000) (holding summary judgment was properly granted where party's "counter-statement was . . . utterly bereft of record citations" and noting that the court "is not required to consider what the parties fail to point out") (internal quotation marks omitted); *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001)

## II. The Undisputed Facts.

At all relevant times, Plaintiff was the sole owner of Senior Associates, LLC ("Senior Associates"), Fairchild Manor Nursing Home, LLC ("Fairchild Manor"), and Healthcare Alliance, Inc. ("Healthcare Alliance"), companies engaged in the business and/or operation of nursing homes and elder care facilities within the greater Buffalo, New York region. Plaintiff was also a Member Manager of Senior Associates, Batavia, and Fairchild Manor, and the President of Healthcare Alliance. Defendant, a member of the Chubb Group of Companies, is an Indiana corporation engaged in the insurance industry with its principal place of business in New Jersey.

For the policy period January 23, 2011 to January 23, 2012, Defendant issued a ForeFront Portfolio insurance policy to Senior Associates, LLC, policy number 8209-6069 (the "Policy"). Batavia, Fairchild Manor, and Healthcare Alliance are all Insured Organizations under the Policy. The Policy afforded a maximum aggregate limit of $1,000,000 for Directors & Officers Liability coverage, inclusive of Defense Costs, and an additional $500,000 limit of liability for a covered loss resulting from a Directors & Officers Claim against any "Executive,"[5] inclusive of Defense Costs.

On December 15, 2011, a criminal indictment (the "Indictment") charged Plaintiff in the United States District Court for the Western District of New York with four counts of wire fraud and one count of making a false statement to Special Agents of the Federal Bureau of Investigations ("FBI") and the Internal Revenue Service ("IRS") in a case, styled *United States v. Marc Irwin Korn*, Case No. 1:11-cr-00384 (the "Criminal Action"). Defendant acknowledged receipt of the Indictment as an event that gave rise to

---

(observing that "a court is not required to scour the record in search of evidence to defeat a motion for summary judgment") (internal quotation marks omitted); *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 (5th Cir. 1992), *cert. denied*, 506 U.S. 832 (1992) ("Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment[.]").

[5] The Policy defines an "Executive" as any natural person who is a "duly elected or appointed director[], officer[], [or] member[] . . . of any Insured Organization incorporated in the United States of America[.]" (Doc. 1-2 at 72.) It is undisputed that Plaintiff is an "Executive" as defined by the Policy.

3

a duty to defend under the Policy. On or about December 27, 2011, Defendant's representative "explained [to Plaintiff] in detail . . . the rate situation and emphasized that it [was] likely that either way the insured would likely use the entire policy limit and would be left paying for the remainder[.]" (Doc. 43-1 at 5, ¶ 20.)

In a letter dated January 30, 2012, Defendant agreed to provide Plaintiff with a defense in the Criminal Action subject to a reservation of rights. In this letter, Defendant informed Plaintiff that because the Indictment was a criminal proceeding, pursuant to Section III(C) of Plaintiff's Policy, only Plaintiff's Defense Costs would be covered in accordance with the Policy's terms and conditions. Defendant advised Plaintiff that Defense Costs incurred in the Criminal Action would reduce the Policy's coverage limits.

On June 28, 2012, a grand jury returned a superseding indictment (the "Superseding Indictment") in the Criminal Action against Plaintiff which asserted four counts of wire fraud; two counts of false statements to a financial institution and to investigative agents of the FBI and the IRS; and four counts of failing to pay payroll/trust fund taxes as well as a false statement to a financial institution pertaining to a mortgage. Plaintiff's Opposition references "an additional indictment" dated April 17, 2015 although no information regarding it has been provided. (Doc. 50 at 6 n.1.) Plaintiff was involved in a bankruptcy proceeding while the Criminal Action was pending which implicated Plaintiff's Fifth Amendment right against self-incrimination.

By letter dated July 2, 2012, Defendant acknowledged receipt of the Superseding Indictment and affirmed it would continue to provide Plaintiff with a defense in the Criminal Action. Because it was determined that Defendant's regular panel of defense counsel should not handle the Criminal Action, Defendant agreed that a non-panel member would be retained to provide Plaintiff's defense. Defendant assented to Plaintiff's request for assistance in obtaining representation and recommended several criminal defense lawyers. Defendant advised Plaintiff that: "Defense Costs were part of, and not in addition to, the applicable Limit of Liability" and that Defense Costs incurred and paid "would continue to reduce [the Policy's liability coverage] limit[.]" (Doc. 43-1 at 4, ¶ 17.) Defendant further advised that the total amount of Defense Costs paid to date

4

under the Policy was $228,909.88, with $771,090.12 remaining under the Policy. *Id.* By email dated January 5, 2013, Plaintiff instructed to "proceed with the current lawyers of DeVita and Considine." (Doc. 50-1 at 4.) In the course of the Criminal Action which was pending for approximately six years, Plaintiff was represented by Day Pitney, LLP, Connors & Vilardo LLP, Seward & Kissell LLP, and Hogan Willig, PLLC.

On or about November 9, 2018, Plaintiff resolved the Criminal Action by pleading guilty to two misdemeanors pursuant to a misdemeanor indictment charging him with one count of bank fraud and one count of violating 26 U.S.C. § 2203 for failing to file a federal tax return, supply information, or pay taxes. As part of the plea agreement, the Indictment and Superseding Indictment were dismissed. Plaintiff was sentenced on or about April 3, 2019. As of an April 26, 2019 hearing, Plaintiff had filed a notice of appeal, however, the parties agree that, insofar as it pertains to the pending motion, the Criminal Action has terminated.

### III. The Disputed Facts.

Plaintiff contends that after July 2, 2012, he obtained an additional $500,000 in coverage from Defendant thereby raising the Policy limit to $1,500,000. This assertion is unsupported by any citation to the record and will not be considered.

Although Plaintiff selected Day Pitney as defense counsel in the Criminal Action, he points to a December 21, 2011 email from Defendant's representative stating:

> Here is another option, Michael Considine at Day Pitney. He is a former federal prosecutor and came very highly recommended.
>
> I have not worked with either of the individuals [I]'ve sent to you, but I am happy to contact either or both for you to arrange a teleconference to discuss this matter. This would likely necessitate me forwarding the indictment to them to understand what we're dealing with. Let me know if this is okay with you.
>
> Let me know how you would like to proceed.

(Doc. 50-12 at 1.) Plaintiff further points to a statement by Defendant's representative that she "take[s] the choice of counsel matters extremely seriously and will continue to evaluate the effectiveness of . . . counsel in this matter." (Doc. 50-20 at 1.) Plaintiff

5

contends these communications support a conclusion that Defendant participated in choosing the lawyers who represented him in the Criminal Action.

Defendant contends that Plaintiff, at various times between 2012 and 2015, asked Defendant to authorize additional attorneys for Plaintiff's defense team to be paid with Policy funds. Plaintiff acknowledges that "[w]hile it is true that on several occasions [he] requested that additional legal personnel outside of Day Pitney be added to his legal team, these requests were either denied by [Defendant] or rejected by his then-current counsel before getting to [Defendant's] decision makers." (Doc. 50-1 at 5, ¶ 22.) Defendant's statement of undisputed facts is supported by admissible evidence documenting Plaintiff's requests for additional staffing, including on matters unrelated to the Criminal Action. It also includes Plaintiff's admission that Defendant "on previous occasions authorized expenditures for other additional legal professionals. It should be noted; to-date [Defendant's representative] has approved **all** such requests." (Doc. 41-10 at 1) (emphasis in original). Plaintiff's contention that his requests for additional counsel were denied is unsupported by admissible evidence, is contrary to the record evidence, and is thus disregarded.

It is undisputed that Plaintiff and Defendant discussed the staffing of Plaintiff's defense in the Criminal Action and that Plaintiff requested and obtained new counsel. On June 20, 2014, Plaintiff described his concerns to Defendant's representative as follows:

> I am concerned that any response in writing in this matter will result in a backlash without first having an exit strategy in place. The remaining resources of the [Policy] of course will be a deciding factor if any new representation will be interested in taking over the case.
>
> . . .
>
> This isn't the first time I've mentioned the switching of representation and have had on multiple instances mentioned this to Monica [Logan] over the past two years. It was [Defendant] who recommended and positioned Day Pitney into place.
>
> One of the several items to be included in my comments will be[:]
>
> Including but not limited to remembering the client is the number [one] priority at all time. That the highest level of professional demeanor is the number 1 priority at all times. It seems that this has been on multiple occasions forgotten by Mr. Devita and his team.

6

> However, I prefer to highlight these matter(s) in writing, after new counsel has been engaged. What I am requesting is how much money is remaining and whether a recommendation of another firm is available. And let me express the urgency in this pursuit.

(Doc. 51-14 at 2.) The same day, Defendant's representative responded, "[i]t appears that you believe counsel is treating you [im]properly. I'd like to discuss further." *Id.* at 1. On July 6, 2014, Plaintiff replied:

> I thought about the discussion we very briefly started last week. Before I initiate a formal request and introduce [Defendant] to a new firm that would represent me, I'm open to having you initiate contact on my behalf to the firm Day Pitney. At this juncture I'm not sure how this will impact my representation however I'm anticipating improved representation. I will initiate in the next few days a list of concerns that need addressing[.] The burning to date of over $1M is of grave concern to me. I feel this is the entire agenda of Mr. Devita and team. I will address this in my more lengthy email.

*Id.* In the light most favorable to Plaintiff, this evidence supports Plaintiff's contention that he raised concerns about the adequacy of his representation in the Criminal Action – a contention Defendant does not dispute.

Defendant claims that "Day Pitney and other lawyers and law firms engaged by Plaintiff at [Defendant's] expense represented Plaintiff in the Criminal Action for approximately a three year prior of time commencing on or about January 12, 201[2]."[6] (Doc. 43-1 at 5, ¶ 23.) Plaintiff disputes this chronology and claims that Day Pitney began representing him in the Criminal Action on January 3, 2012. The court finds this dispute immaterial.

With regard to Day Pitney's representation, Defendant claims that Plaintiff played an active role in his defense, was kept fully informed, participated in his defense team's strategic objectives and goals, and directed his defense. Plaintiff acknowledges that he was kept informed through the provision of "sporadic commentary regarding desired goals and/or outcomes of the case," but asserts that he deferred to his criminal defense

---

[6] There appears to be a typographical error in the year as it is undisputed the Criminal Action commenced on or about December 5, 2011.

attorneys regarding final decisions on substantive motions and case direction. (Doc. 50-1 at 5, ¶ 24.)

Defendant asserts that the defense provided to Plaintiff was "rigorously professional and robust." (Doc. 43-1 at 6, ¶ 25.) Plaintiff disagrees and asserts that, while representing him, Day Pitney exhausted $1,121,239.43 of the Policy limits and engaged in only four "efforts": (1) seeking the severance of counts six, seven, eight, and nine from the Superseding Indictment; (2) filing a motion to suppress statements made by Plaintiff to IRS agents; (3) participating in basic discovery including two evidentiary hearings; and (4) objecting to the Report and Recommendation by Magistrate Judge Jeremiah J. McCarthy.

Defendant represents that it periodically and throughout the three-year period of Day Pitney's representation kept Plaintiff apprised of the amount of Defense Costs paid as well as the remaining funds under the Policy. Plaintiff agrees that he was informed of the remaining Policy limits on five occasions: January 14, 2013, March 7, 2013, September 10, 2013, November 11, 2013, and December 1, 2013. He, however, asserts that he never received a monthly accounting of either the legal bills submitted by Day Pitney or the Defense Costs paid through the Policy. Plaintiff cites no evidence that he requested or was entitled to a monthly accounting.

Pursuant to Defendant's Litigation Management Guidelines (the "Guidelines"), defense counsel billing was reviewed for compliance; fees and expenses inconsistent with the Guidelines were not deducted from the Policy limits. Specifically, Defendant cites its auditors' reductions totaling $209,318.84 from defense counsels' invoices, which were later reduced by $56,382.59 on appeal. Plaintiff disputes Defendant's calculations and asserts that he performed his own audit which reveals that Defendant reduced the attorney's fees by $65,149.50 and expenses by $55,578.02. Plaintiff further contends that there are "several line items on Day Pitney's legal bills for 'Matter Disbursements' that memorialize legal services rendered by law firms such as Connors & Vilardo, LLP and Seward & Kissell LLP." (Doc. 50-1 at 6, ¶ 27.) Plaintiff asserts that these "Matter Disbursements" violated the Guidelines' requirement that all work performed by

8

attorneys be billed with specificity. Plaintiff contends that his review of Defendant's audit reports memorializes no review or subsequent write-off for these allegedly improperly billed "Matter Disbursements[.]" In his Opposition, Plaintiff identifies charges totaling $136,322.66 which he finds inadequately documented and potentially inconsistent with the Guidelines.

On or about April 21, 2015, Defendant paid the remaining $261,978.94 available under the Policy. Plaintiff disputes this assertion and claims that Defendant paid $334,325.24, $72,346.30 of which was paid to Plaintiff's current counsel after invoices were submitted to Defendant.

The court concludes that none of the alleged disputed facts are material to the resolution of Defendant's motion for summary judgment as they are either unsupported by record references, *see* Fed. R. Civ. P. 56(c)(1) and L. R. Civ. P. 56(a)(2), will not affect the outcome,[7] or consist of arguments regarding the proper characterization of undisputed evidence as opposed to actual disputes of fact. *See Bordelon v. Chicago Sch. Reform Bd. of Trs.*, 233 F.3d 524, 528 (7th Cir. 2000) (ruling that "a disputed issue of fact is "not satisfied by citations to the record that support legal argument rather than controvert material facts").

### IV. Conclusions of Law and Analysis.

#### A. Standard of Review.

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court "constru[es] the evidence in the light most favorable to the nonmoving party and draw[s] all reasonable inferences in his favor." *McElwee v. Cty. of Orange*, 700 F.3d 635, 640 (2d Cir. 2012). "The function of the district court in considering the motion for summary judgment is not to resolve disputed questions of fact but only to

---

[7] Not all disputes of fact are material – "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986) (citations omitted). In addition, "[a] fact is 'material' . . . [only] if it 'might affect the outcome of the suit under the governing law.'" *Rodriguez v. Vill. Green Realty, Inc.*, 788 F.3d 31, 39 (2d Cir. 2015) (quoting *Anderson*, 477 U.S. at 248).

determine whether, as to any material issue, a genuine factual dispute exists." *Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 545 (2d Cir. 2010). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Proctor v. LeClaire*, 846 F.3d 597, 608 (2d Cir. 2017) (internal quotation marks omitted).

The moving party always "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). "[T]he plain language of Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322. When the moving party has carried its burden, its opponent must produce "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

Summary judgment is not a "disfavored procedural shortcut, but rather an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy and inexpensive determination of every action." *Celotex*, 477 U.S. at 327.

Although Plaintiff's Amended Complaint alleges causes of action which are not clearly identified as sounding in tort or contract, in his Opposition, he describes his claims as follows:

> In order to ensure [Plaintiff] received an adequate defense, [Defendant] should have: (1) made certain that [Plaintiff's] defense by Day LLP and other law firms retained by the same was progressing at a rate at which promoted resolution of the Criminal Proceeding; (2) followed its own Litigation Management Guidelines to ensure proper disbursement of the Policy's Funds; and (3) followed and abided by its own directives and statements regarding staffing of [Plaintiff's] defense team.

(Doc. 50 at 3.) The court thus adjudicates the motion for summary judgment on the basis of Plaintiff's claims as articulated in his Amended Complaint and as summarized in his Opposition.

> B. **Whether Plaintiff's Claim for Vicarious Liability/Breach of Fiduciary Duty Fails as a Matter of Law.**

Plaintiff asserts that Defendant owed him a fiduciary duty based on a special relationship of trust and confidence, and that Defendant's failure to monitor his criminal defense attorneys, audit the legal fees they incurred, and replace counsel "when Plaintiff made Defendant[] aware that the firm was wasting the finances available for coverage" constituted a breach of that duty. (Doc. 1-2 at 16, ¶ 109.) More specifically, he contends Defendant "breached [its] duty owed to Plaintiff by failing to keep track of the legal fees and compare [them] to the work performed in order to ensure effective and efficient delivery of legal services." *Id.* at 13, ¶ 86. Defendant seeks summary judgment on this claim, arguing New York does not recognize a fiduciary duty or vicarious liability premised upon the acts or omissions of outside counsel retained by an insurance company for its insured's defense.

Under New York law, to establish a breach of fiduciary duty, "a plaintiff must prove the existence of a fiduciary relationship, misconduct by the defendant, and damages that were directly caused by the defendant's misconduct[.]" *Kurtzman v. Bergstol*, 835 N.Y.S.2d 644, 646 (N.Y. App. Div. 2007). "[G]enerally speaking, a liability insurer may not be held vicariously liable for the lapses of retained counsel exercising independent judgment on behalf of the insured[.]" *Young v. Nationwide Mut. Ins. Co.*, 801 N.Y.S.2d 827, 829 (N.Y. App. Div. 2005). The reasons for this exception are twofold:

> First, the duty to defend an insured is by its very nature delegable, as all the parties must know from the outset, for in New York . . . an insurance company is in fact prohibited from the practice of law (Judiciary Law § 495). Accordingly, the insurer necessarily must rely on independent counsel to conduct the litigation. Second, the paramount interest independent counsel represents is that of the insured, not the insurer. The insurer is precluded from interference with counsel's independent

11

professional judgments in the conduct of the litigation on behalf of its client .... Vicarious liability thus produces an untenable situation here: on the one hand an insurer is prohibited from itself conducting the litigation or controlling the decisions of the insured's lawyer, yet on the other hand it is charged with responsibility for the lawyer's day-to-day independent professional judgments in the "nuts and bolts" of representing its client.

*Feliberty v. Damon*, 527 N.E.2d 261, 265 (N.Y. 1988) (emphasis omitted).

"Despite the general rule that an insurer owes no fiduciary duty to the insured, 'there are instances where a fiduciary relationship springs into existence' under circumstances where there is a special relationship of trust and confidence between the parties." *Emp'rs Ins. Co. of Wausau v. Crouse-Cmty. Ctr., Inc.*, 489 F. Supp. 2d 176, 180 (N.D.N.Y. 2007) (quoting *Rabouin v. Metro Life Ins. Co. of Am.*, 699 N.Y.S.2d 655, 657 (N.Y. Sup. Ct. 1999)). "But those instances are the exception rather than the rule[.]" *Rabouin*, 699 N.Y.S.2d at 635. "[I]n general, a contract of insurance does not otherwise create a fiduciary relationship between the parties." *Goshen v. Mut. Life Ins. Co. of N.Y.*, 1997 WL 710669, at *8 (N.Y. Sup. Ct. Oct. 21, 1997). "Such a relationship exists and a fiduciary duty is created [only] when the insurer undertakes the responsibility of representing the insured in the context of litigation." *Emp'rs Ins. Co.*, 489 F. Supp. 2d at 180. "The basis for the fiduciary obligation is quite clear in the litigation context, for the insurer is undertaking to represent the insured's interests." *Id.* (quoting *Dornberger v. Metro. Life Ins. Co.*, 961 F. Supp. 506, 546 (S.D.N.Y. 1997)); *see also Hartford Accident & Indem. Co. v. Mut. Ins. Co.*, 462 N.Y.S.2d 175, 178 (N.Y. App. Div. 1983) ("In defending a claim, an insurer is obligated to act with undivided loyalty; it may not place its own interests above those of its [insured].").

To the extent Plaintiff seeks to hold Defendant liable for the alleged shortcomings of his defense counsel in the Criminal Action or their "day-to-day independent professional judgments[,]" *Feliberty*, 527 N.E.2d at 265, "[g]iven the insurer's inability to provide or control the legal services in issue, and the existence of a remedy for incompetence against counsel, . . . the imposition of vicarious liability in the circumstances is unwarranted." *Id.* Because it is undisputed that Defendant did not

represent Plaintiff in the Criminal Action, there is neither a factual nor legal basis for concluding that Defendant assumed responsibility for Plaintiff's defense. *Emp'rs Ins. Co.*, 489 F. Supp. 2d at 180 (citation omitted). Even if Defendant brokered the attorney-client relationship as Plaintiff contends, this is not one of those rare cases in which a fiduciary duty may be found. Defendant's motion for summary judgment on Plaintiff's claim for breach of fiduciary duty/vicarious liability is therefore GRANTED.

### C. Whether Plaintiff's Claim for Breach of the Policy Fails as a Matter of Law.

Defendant moves for summary judgment on Plaintiff's claims for breach of the duty to defend because Plaintiff fails to rebut Defendant's evidence that it fully satisfied its defense obligations under the Policy. In response, Plaintiff asserts that Defendant breached the Policy by: (1) failing to ensure that his defense in the Criminal Action progressed at a proper rate to reach resolution before the Policy limits were exhausted; (2) failing to follow its own Guidelines; and (3) failing to appropriately staff his defense team. Under New York Law, a plaintiff alleging a breach of contract must establish: (1) "the existence of a contract; (2) a breach of that contract; and (3) damages resulting from the breach." *Nat'l Mkt. Share, Inc. v. Sterling Nat'l Bank*, 392 F.3d 520, 525 (2d Cir. 2004).

#### 1. Defendant's Alleged Failure to Ensure the Criminal Action Progressed at a Rate to Reach Resolution Prior to Exhaustion of the Policy Limits.

Plaintiff argues that the Policy required Defendant to ensure the Criminal Action reached a final resolution before the Policy limits were exhausted. He identifies no provision of the Policy that imposes this obligation. The Policy provides in relevant part:

> [Defendant] shall have the right and duty to defend any Claim covered by this Policy and shall have the sole right and duty to select counsel for the defense of any such Claim and such counsel shall be chosen from the [Defendant's] list of approved counsel. The Parent Corporation shall have the right to consent to the [Defendant's] choice of defense counsel, which consent shall not be unreasonably withheld, and to participate and assist in the direction of the defense of any Claim. If the Parent Corporation reasonably withholds its consent to the [Defendant's] choice of defense counsel for a particular Claim, the Parent Corporation may choose defense

13

> counsel from [Defendant's] list of approved counsel. Coverage shall apply even if any of the allegations are groundless, false or fraudulent. [Defendant's] duty to defend any Claim shall cease upon exhaustion of the applicable Limit of Liability.

(Doc. 1-2 at 40.) By its plain language, the Policy requires no "reasonable rate of progression." It thus neither required Defendant to ensure a swift resolution of the Criminal Action, nor could it reasonably impose such a burden unless Defendant assumed responsibility for Plaintiff's criminal defense. *See Feliberty*, 527 N.E.2d at 265 (recognizing "the insurer's inability to provide or control the legal services" of retained counsel). From the outset of the Criminal Action, Defendant advised Plaintiff that Plaintiff would "likely use the entire [P]olicy limit and would be left paying for the remainder[.]" (Doc. 43-1 at 5, ¶ 20.) Thereafter, Defendant repeatedly reminded Plaintiff that Defense Costs would reduce the Policy limits. Plaintiff has proffered no evidence of a promise to the contrary.

Because Plaintiff has failed to establish a contractual obligation under the Policy to ensure a "reasonable rate of progression" so as to avoid exhaustion of the Policy limits, Defendant's motion for summary judgment on this aspect of Plaintiff's breach of contract claim is GRANTED. *See Celotex*, 477 U.S. at 322 ("[T]he plain language of Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.").

### 2. Defendant's Alleged Breach Based on Failure to Comply with Its Guidelines.

Plaintiff asserts Defendant breached the Policy by failing to comply with its own Guidelines and "failing to keep track of the legal fees and compare the work performed in order to ensure effective and efficient delivery of legal services." (Doc. 1-2 at 13, ¶ 86.) Plaintiff identifies no obligation in the Policy requiring Defendant to follow its own Guidelines for Plaintiff's benefit. The Guidelines themselves do not extend this promise but rather provide that they:

> [were] developed to establish the expectations of [Defendant] . . . with respect to reasonable defense costs (as defined in the policy) of defense

counsel retained to defend our insureds. Our objective, which we believe is shared, is to provide an aggressive, efficient, quality defense of claims brought against our insureds. We expect, and the policy requires, full cooperation from defense counsel responsible for the litigation as well as from the insureds. We believe that the partnership developed through adherence to these guidelines will ensure that these mutual objectives are achieved.

(Doc. 50-3 at 2.) The language in question is clearly aspirational in nature. *See Ullmo ex rel. Ullmo v. Gilmour Acad.*, 273 F.3d 671, 677 (6th Cir. 2001) (holding "a breach of contract claim will not arise from the failure to fulfill a statement of goals or ideals"); *Gally v. Columbia Univ.*, 22 F. Supp. 2d 199, 207-08 (S.D.N.Y. 1998) (holding "the mere allegation of mistreatment without the identification of a specific breached promise or obligation does not state a claim on which relief can be granted" and noting "general promises about ethical standards" are unenforceable). Moreover, no reasonable interpretation of the Guidelines gives rise to a contractual duty to Plaintiff. To the contrary, the Guidelines recognize that Defendant must not restrict the exercise of the professional judgment of retained defense counsel in rendering legal services on behalf of its insured.[8]

"[C]ourts in New York . . . have expressly disavowed a cause of action based . . . on failure to follow internal guidelines." *Nassar v. Madera*, 2016 WL 3945689, at *6 (S.D.N.Y. July 19, 2016). Here, "Plaintiff's theory of liability against the insurer defendants fails because plaintiff has not alleged that the insurer defendants had a duty of care to him in the form of following their internal underwriting guidelines." *Id.* Even if Plaintiff could establish a contractual obligation, he fails to proffer admissible evidence of its breach. *See Nat'l Mkt. Share, Inc.*, 392 F.3d at 525 ("To establish a *prima facie* case for breach of contract, a plaintiff must plead and prove . . . a breach of that contract[.]"). Because Plaintiff fails to establish a promise by Defendant to follow its

---

[8] The Guidelines recognize that: "Nothing contained herein is intended to restrict, nor shall [Defendant] restrict, defense counsel's exercise of professional judgment in rendering legal services on behalf of the insured or otherwise interfere with any ethical obligation governing the conduct of counsel." (Doc. 50-3 at 2.)

own Guidelines for Plaintiff's benefit and a breach thereof, summary judgment in Defendant's favor is GRANTED on this aspect of Plaintiff's breach of contract claim.

### 3. Whether Defendant Breached its Promise Regarding the Staffing of Plaintiff's Defense Team.

Asserting that he relied on Defendant's representation that Attorney "Considine and his law firm would be the only attorneys representing him throughout the Criminal Proceeding[,]" (Doc. 50 at 20), Plaintiff claims Defendant breached the Policy by adding attorneys and law firms to Plaintiff's defense team without his approval.[9] Plaintiff notes that Defendant "allowed three separate law firms to bill time in conjunction with the Policy funds." *Id.* at 21. Plaintiff, however, admits that he "requested that additional legal personnel outside of Day Pitney be added to his legal team[.]" (Doc. 50-1 at 5, ¶ 22.)

The Policy provides Defendant "shall have the sole right and duty to select counsel for the defense of any . . . [c]laim." (Doc. 1-2 at 40.) Construing the evidence in the light most favorable to Plaintiff, no rational jury could interpret this provision as requiring Plaintiff's consent to any additional representation. *See Scott v. Harris*, 550 U.S. 372, 380 (2007) ("Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.") (internal quotation marks omitted). It is thus immaterial whether Defendant, Plaintiff, or both participated in the staffing of Plaintiff's criminal defense. Under the Policy, Defendant retained the sole right and duty to select defense counsel. It did so in the Criminal Action

---

[9] In support of this claim, Plaintiff cites Defendant's December 22, 2011 case notes which state:

> [Plaintiff] kept discussing wanting a "team" of lawyers and hiring Michael on top of his current lawyers. I stressed that would definitely not be the case and if we were to retain Michael it would be just him and his firm. I tried to explain to the insured that multiple firms involved in this matter would be disastrous to his defense.

(Doc. 39-10 at 1.) It is not clear how this case note supports Plaintiff's contention that attorneys were added to his defense team in the Criminal Action against his will. Rather, the note supports a contrary conclusion. Were Plaintiff's interpretation of the case note correct, it nonetheless does not give rise to a contractual obligation.

either at Plaintiff's urging or with Plaintiff's knowledge and consent. Under New York law, a claim of breach of contract does not lie when a plaintiff cannot identify a provision of the insurance policy that has been breached. *See Gally*, 22 F. Supp. 2d at 207. The court therefore GRANTS Defendant's motion for summary judgment on this final component of Plaintiff's breach of contract claim.

      **D.    Whether Plaintiff's Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing Fails as a Matter of Law.**

Plaintiff claims Defendant breached the implied covenant of good faith and fair dealing based on the same facts he alleges in support of his breach of contract claims. "New York law . . . does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach of contract claim, based upon the same facts, is also pled." *Harris v. Provident Life & Accident Ins. Co.*, 310 F.3d 73, 81 (2d Cir. 2002); *see also Mktg. Devs., Ltd. v. Genesis Imp. & Exp., Inc.*, 2009 WL 4929419, at *4 (E.D.N.Y. Dec. 21, 2009) ("Plaintiff has not demonstrated that its allegations of breach of the covenant of good faith and fair dealing are causes of action independent of the alleged breach of contract. Therefore, . . . any appropriate damages [should] be awarded only on the basis of plaintiff's claimed breach of contract."); *ICD Holdings S.A. v. Frankel*, 976 F. Supp. 234, 243-44 (S.D.N.Y. 1997) ("A claim for breach of the implied covenant will be dismissed as redundant where the conduct allegedly violating the implied covenant is also the predicate for breach of covenant of an express provision of the underlying contract.") (internal quotation marks omitted).

"Despite the existence of a contract, a plaintiff may still succeed on a claim for breach of the implied covenant of good faith and fair dealing if he can establish[] a legal duty separate and apart from contractual duties." *Schonfeld v. Wells Fargo Bank, N.A.*, 2017 WL 4326057, at *5 (N.D.N.Y. Sept. 27, 2017) (alteration in original) (internal quotation marks omitted). In this case, Plaintiff establishes no legal duty separate from Defendant's contractual duties under the Policy and therefore his claim based on the implied covenant of good faith and fair dealing fails as a matter of law. Plaintiff's failure

to proffer admissible evidence establishing that Defendant failed to act in good faith only buttresses that conclusion.

For the reasons stated above, Defendant's motion for summary judgment on Plaintiff's breach of the implied covenant of good faith and fair dealing claim is GRANTED.

### E. Whether Plaintiff's Claim for Emotional Damages Fails as a Matter of Law.

In his Amended Complaint, Plaintiff seeks $5 million in damages for "great mental anguish" as a result of Defendant's conduct which he characterizes as "negligent, careless, wanton, intentional and unreasonable." (Doc. 1-2 at 17, ¶¶ 112-13.) He claims Defendant's acts and omissions resulted in "severe stress which[] . . . caused a worsening of his heart condition resulting in three heart attacks and numerous hospitalizations and strokes." *Id.* at 17, ¶ 121. Defendant seeks summary judgment with regard to this claim, asserting that New York law does not authorize the recovery of emotional distress damages in the facts and circumstances of this case.

"In New York it is generally held that emotional and mental distress is not compensable in a breach of contract action . . . . Bad faith alone is insufficient to justify an exception to the general rule." *Martin v. Donald Park Acres at Hasting, Inc.*, 389 N.Y.S.2d 31, 32 (N.Y. App. Div. 1976); *see also Brown v. Gov't Emps. Ins. Co.*, 66 N.Y.S.3d 733, 736 (N.Y. App. Div. 2017) ("It has long been the rule that absent a duty upon which liability can be based, there is no right of recovery for mental distress resulting from the breach of a contract-related duty[.]") (internal quotation marks omitted). In other words, "damages for emotional distress for breach of contract are available only in certain limited circumstances, such as a willful breach accompanied by egregious and abusive behavior[.]" *Id.* In this case, no breach of contract has been established, no legal duty independent of the Policy exists, and Plaintiff has proffered no admissible evidence of bad faith. Summary judgment with regard to Plaintiff's request for emotional distress damages is thus mandated. *See Campbell v. Silver Huntington Enters., LLC*, 733 N.Y.S.2d 685, 686 (N.Y. App. Div. 2001) ("[Plaintiff] is not entitled to

recover damages for emotional distress pursuant to her breach of contract claim. It is well settled that a simple breach of contract is not to be considered a tort unless a legal duty independent of the contract itself has been violated[.]").

## CONCLUSION

For the foregoing reasons, the court GRANTS Defendant's motion for summary judgment (Doc. 39) and enters judgment in Defendant's favor on each of Plaintiff's claims. The court DENIES AS MOOT Defendant's request for a declaratory judgment pursuant to its counterclaim.

SO ORDERED.

Dated at Burlington, Vermont this 6th day of September, 2019.

Christina Reiss, District Judge
United States District Court